(9 Misc. Rep. 139.)

### KINKELE et al. v. WILSON.

(Common Pleas of New York City and County, General Term. June 4, 1894.)

WILLS—CONSTRUCTION.

A will provided that testator's widow should have the entire income of the estate during widowhood, and that, if she should remarry, a certain annuity should be paid her. Subject to such provision, he devised his estate in equal shares to plaintiffs and certain nieces. By a codicil he gave the widow "one equal third" of the real estate in fee simple, "in addition to the provision" already made for her, and revoked the devise in favor of the nieces, declaring that plaintiffs should take in equal shares the portion of the estate which had been devised to them and the nieces, "saving and excepting therefrom the one equal third share of my real estate * * * which I have herein given, devised, and bequeathed to my said wife." *Held*, that the widow took the third of the real estate subject to its proportionate share of the annuity, and only the residue of such annuity was charged on plaintiffs' shares.

Appeal from judgment on report of referee.

Action by John G. Kinkele and another against Emma Giles Wilson for an accounting of moneys received. There was a judgment in favor of defendant, and plaintiffs appeal. Reversed.

Argued before BOOKSTAVER, BISCHOFF, and PRYOR, JJ.

C. P. & W. W. Buckley, for appellants.

George Burnham, Jr., for respondent.

BOOKSTAVER, J. Henry C. Giles died April 27, 1887, leaving a last will and testament, and a codicil thereto, both of which were duly admitted to probate in this county. George B. Patterson, one of the executors named in the will, qualified as such, and has taken charge of the estate, which consisted of a small amount of personal property, and the premises known as "Nos. 163, 165, and 175 Canal Street," in this city. Emma Giles, the defendant herein, and the widow of Henry C. Giles, remarried February 11, 1891. The ex-

ecutor did not know of this until some months after it took place, and paid her the entire income of the estate up to May 1, 1891. Since that time he has paid her at the rate of $2,000 per annum, and the remainder of the income is still in his hands. Plaintiffs seek an accounting by the defendant for all moneys received by her since her remarriage, and that she pay over to each of them one-third of the net income of the estate since that time, less the sum of $2,000. Whether the action will lie or not depends upon the construction to be given to certain portions of the will and codicil. The testator, in his will, after providing for the payment of his debts and funeral expenses, directed that the rents and income of his estate should be paid to his wife, Emma, the defendant herein, "so long, during her natural life, as she shall remain my widow and unmarried." If she should remarry, he directed that the sum of $2,000 annually should be paid to her at specified periods during her life. Subject to this provision for his widow, he gave, devised, and bequeathed his estate in equal shares to certain relatives, including the plaintiffs. The will also provided that the above-named provisions for testator's wife should be in lieu of dower and every other right or interest she might have in the estate. By the codicil the testator changed his will as follows:

"In addition to the provisions which in and by my said will I have made for the benefit of my beloved wife, Emma Giles, I do give and bequeath unto her all my household goods and furniture absolutely, as and for her own property, and to be at her own disposal: And also I do give, devise, and bequeath unto my said wife in fee simple, all the one equal third of my real estates," etc.; "and these gifts are to take effect whether or not she shall remarry after my death, if she shall survive me."

He then revokes his devise to certain nieces, and continues:

"Hereby declaring that it is my will that my brother William P. Giles and my nephew John G. Kinkele shall take, in equal shares, the portion of my estate which, in and by my said will, is given, devised, and bequeathed to them and to my said two nieces, * * * saving and excepting therefrom the one equal third part of my real estate and the household goods and furniture which I have herein given, devised, and bequeathed to my said wife, Emma Giles."

Appellants contend that, since the remarriage of the respondent, they are each entitled to one-third of the net annual income of the estate, after deducting $2,000 awarded the widow annually by the will, while respondent contends that she is entitled to one-third of the entire net income of the estate, and to $2,000 more. In other words, if the entire net income of the estate were $6,000, she would be entitled to $4,000, while the devisees of two-thirds of the estate would be entitled to only $1,000 each. Respondent bases this contention on the language of that part of the codicil before quoted, and insists that the whole of the first part of it should be read as one sentence, and that inasmuch as the first clause gives the household goods and furniture to the respondent "absolutely, as and for her own property, to be at her own disposal," so the second clause, connected, as she claims, by the words "and also," devised one-third of the real estate to her in like manner, i. e. as and for her own property, to be at her disposal. But this seems to us to be a

very inartificial and forced construction of the sentence. Had this. been the intention of the testator, the natural construction of the sentence would have been to have placed the words "absolutely, as and for her own property, and to be at her own disposal," after both the gift and the devise, so that they would have controlled. both clauses of the sentence. While it is true, as respondent contends, that the word "also" has the meaning of "in like manner," it more frequently means "too; further; in addition to" (Imperial Dict.; Webst. Dict., ad haec verba); and this we think the plain and natural meaning in the sentence under consideration. Thus. read, the whole sentence is plain and unambiguous. The first clause, commencing with "In addition to," gives the personal property to the widow absolutely; the second clause, commencing with "And. also," devises one-third of the realty to her in addition to the personalty, but subject to whatever charge there was upon the whole realty,—the change of language from "In addition to" to "And also" being made to avoid the repetition of the same words, and not because the meaning had changed. So far on the theory that all was. intended as one sentence; but this we think was not the intention.. Some error has crept into the codicil as it stands. The gift of the personal property is separated from the devise of the realty by a colon, while the "and" in the devising clause is written with a capital letter. No ordinary copyist, and certainly no one capable of drafting a will, would write the conjunction "and" with a capital in the middle of a sentence, any more than he would "if" or "or." It is far more likely that the copyist, through error or mere inadvertence, put two dots where one should have been written, than. that he should have written "and" with a capital A. If this is so, then we have two complete sentences, one containing a gift to the widow absolutely, free from all charges, and the other a devise subject to any charge then existing on the realty.

The respondent also insists that the use of the words "In addition to" frees the devise of the one equal third of the real estate to her from the charge on the remainder of the real estate. But, as we have before shown, these words only mean that the widow was to have something in addition to the $2,000 left her by the will in case of her remarriage. This additional something was—First, personal property, which the testator was careful to provide should be free from every charge by giving it to her absolutely in every event;. and, second, one-third of the realty which he devised without any such provision.

Nor do we think that the words "in fee simple" at all aid respondent's contention. "Fee simple" is defined by Bouvier to be "a pure estate of inheritance, not restrained by any heirs, nor subject to any condition or collateral determination except the law of escheat." 2 Bouv. Law Dict. p. 215. The word "simple" adds no. meaning to the word "fee," standing by itself; but it excludes all qualification or restriction as to the persons who may inherit it as heirs, thus distinguishing it from fee tail, as well as from an estate which, though inheritable, is subject to conditions or collateral determination. 1 Washb. Real Prop. 51. The phrase does not mean·

that the fee is to be absolutely free from all incumbrances or charges. The words would have been apt and appropriate had the real estate been mortgaged for two-thirds of its value. But in that event no one would have argued that these words released the widow's share from the incumbrance of the mortgage, and why should they from the charge to pay the widow's annuity?

No one will dispute but that the $2,000 annuity was, by the will, expressly charged on the whole estate left by the testator. This charge, as we have before shown, was expressly removed from the personal estate. It is a general rule that a codicil will not operate as a revocation beyond the clear import of its language, and that an expressed intention to make an alteration in a will in one particular negatives by implication an intention to alter it in any other respect. Wetmore v. Parker, 52 N. Y. 450; McLoskey v. Reid, 4 Bradf. 334. Applying this rule to the case under consideration, we cannot escape the conclusion that the respondent's one equal third of the real estate given her by the codicil remains subject to the charge imposed by the will. As before shown, this charge is not expressly removed by anything contained in the codicil, while the personal property is expressly freed from it. By the will the testator gave his entire estate to the appellants and two nieces in equal shares, charged, however, with the payment of the entire income to respondent until her death or remarriage, and, on her remarriage, subject to the payment of the annuity of $2,000. By the codicil the testator revokes every gift and devise to the two nieces named in the will, and, after giving his household goods and furniture to the respondent, he gives her, "in fee simple, all the one equal third part of my real estate," making no mention of the charge, and then gives to the appellants, "in equal shares, the portion of my estates which in and by my said will is given devised and bequeathed to them and my said two nieces  *  *  *  saving and excepting therefrom the one equal third part of my real estate and the household goods and furniture which I have herein given" to respondent. No other alterations are made by the codicil, and in it the testator expressly confirms his will except as altered. By the codicil, were it not for the exception of one-third in the widow's favor, the whole of the real estate would have gone to the appellants. In that case there could have been no question but that the whole would have been charged with the annuity to her. But if the codicil gives one-third of the real estate so charged to her, how can it be argued that the mere gift of property charged with an annuity discharges it? Again, the words "equal third part," used throughout the codicil to designate that portion of the real estate given to the respondent, we think extremely significant. What is respondent's one "equal third part" equal to, if not to the third part of each of the appellants? Yet, if her contention is sound, how unequal these equal thirds are, hers being free and clear, and each of the other two equal thirds not only charged with one-third of the annuity, but surcharged with one-half of one-third more. We therefore conclude that the charge still remains upon the entire real estate, including respondent's portion. A much stronger case than the one now under consideration was decided ad-

versely to respondent's contention in Redfield v. Redfield, 126 N. Y. 466, 27 N. E. 1032. In this case real estate was devised to three persons, M., J., and L., charged with the payment of an annuity to testator's wife. By a codicil the devise was changed by striking out J. and L., and leaving all to M. alone, subject to the same provisions and conditions contained in the will to be kept and performed by M. alone. By a later codicil, testator devised said premises to M. and L., equally as tenants in common, no reference being made to the annuity for the wife. Held, that under the last codicil the land was devised to M. and L., subject to the annuity; that the fact that no reference was made in the last codicil to the condition upon which the premises were devised in the will and the first codicil did not show an intent to devise it free and clear from the charge of the annuity, or to charge it upon the interest of M. alone. The fact that the gift and devise to the respondent in the codicil is to take effect whether or not she shall remarry does not free the real estate from the charge. The respondent takes no further or other estate than she would have received if these words had not been used. In this case the fee in the respondent is no more absolute than the fee in the appellants. She did not have an absolute life estate, so that it would merge in the one equal third of the fee devised to her. If the devise of one equal third in the codicil had been to a stranger, no one would have thought of arguing that it was not subject to respondent's annuity, and the fact that both are to the same person cannot alter the case. We therefore decide that the judgment appealed from must be reversed, but, as all the facts are substantially uncontradicted, it is not necessary that the respondent should be ordered to account for the moneys received by her. Justice will be attained if a judgment is entered in accordance with the foregoing opinion, and the following statement of the account between the parties:

| | | |
|---|---:|---:|
| Net rents, Feb. 1st, 1891, to Jan. 1st, 1893 | | $7,269 11 |
| Less rents, Feb. 1st to 11th, 1891 | $ 115 88 | |
| Annuity Feb. 11th, 1891, to Jan. 1st, 1893 | 3,777 77 | 3 893 65 |
| | | $3,375 46 |
| Share of plaintiff Kinkele | | $1,125 15 |
| Share of Giles | | 1 1: 5 15 |
| Share of defendant | | 1,125 16 |
| | | $3,375 46 |
| Defendant's share of rents, Feb. 1st to 11th, 1891 | | $ 115 88 |
| Annuity to Jan. 1st, 1893 | | 3,777 77 |
| Share of balance | | 1,125 16 |
| Total | | $5 018 81 |
| Payments to defendant | | 4,372 39 |
| Leaving due respondent, Jan. 1st, 1893 | | $ 646 42 |

—Which should be paid her, and the remainder of the rents—$1,125.15 —to each of the appellants; they to have the costs of this appeal and the costs of the action up to final judgment, to be paid out of the income of the estate. All concur.